warned him not to go to the clinic. "Even though I needed stitches, the deputies told me not to go to the clinic. They said that if I went to the clinic they would beat me up even worse when I got back. The clinic tried calling me in over and over for about a week, and I refused every time."

70. In the ACLU Report, Prisoner 33 reported that on May 13, 2009, he was beaten up by a group of deputies, even though he had done nothing to justify the beating "At some point during my tier time," he recalled, "[one of the deputies] told me that the deputies needed to talk to me. He took me to the front of the module, grabbed my hands, leaned up to my ear and said, 'Who's the f***ing punk now?' I kept telling him that I didn't want any problems. He said, 'It's too late now.' After going down, all I can remember is trying to crawl away. At the very end, when I was already on the floor and barely conscious, the deputies ripped my pants almost completely off and tasered me."

71. In the ACLU Report, Prisoner 10 reported being beaten up by deputies and then being threatened if he reported the abuse. "I was coming back from seeing my lawyer," the prisoner reported, "[when] a few deputies surrounded me. I told them I didn't want problems but they started kicking me and hitting me. They bruised my nose and forehead, split my lip and sprained my arm. After they finished beating me they told me, "You tell anybody about this and we'll kill you, you nigger bitch."

72. In the ACLU Report, Prisoner 34 reported that he was beaten up by a group of deputies because of his alleged connection to a gang the deputies did not like because gang was implicated in the death of a LASD staff member. Even though this particular prisoner had no connection to the deputy's death, deputies smashed his wrist where he had a tattoo of the gang's name, breaking it in several places. The deputies also injured his face and legs.

73. Prisoner 34 and the ACLU formally reported this incident to the LASD by sending a formal complaint to the LASD on March 12, 2009 but received no response from BACA or the department.

74. On March 2, 2009, during a routine walk-through by the ACLU, Prisoner 35 complained that deputies had not been giving him showers and that he needed medical attention

75. A few days later, a deputy escorted Prisoner 35 to another module where he ordered him to stand against a wall. A second deputy referenced Prisoner 35's complaint to the ACLU about access to showers and stated, "We can fix that," as he slapped Prisoner 35 on the back of the head. The deputy then proceeded to kick Prisoner 35's feet from under him, until he fell on the floor. While Prisoner 35 was on the ground, both deputies kicked and punched him in the back and one deputy then hit him in the face and jaw with a flashlight several times. During the beating one of the deputies exclaimed, "you f***ing whiners, tell this to the ACLU, I dare you." Following the violent beating, Prisoner 35 was hospitalized for a few days and received stitches on both sides of his face.

76. Prisoner 36 is a 29-year old man with developmental disabilities and severe diabetes. On or about May 14, 2009 Prisoner 36 was returning to his cell from pill call when a deputy told him he needed permission to return to his cell even though other prisoners were freely returning to their cells.

77. Prisoner 36 complied with the deputy's request and faced the wall. The deputy told Prisoner 36 that if he turned around he would slap him. The deputy grabbed Prisoner 36's hands together and slapped him five times on the right side of the head. After the incident, Prisoner 36 contacted his mother about the incident. Prisoner's mother lodged a complaint with the ACLU.

78. The next morning, a deputy removed Prisoner 36 from his cell telling him that the nurse wanted to see him, asked him why he reported the incident and removed his sheets, blanket, and food. Several hours later, another deputy came to Prisoner 36's cell accompanied by another prisoner. The deputy ordered Prisoner 36's bunkmate to leave the cell, and left Prisoner 36 in the cell with the prisoner. The prisoner beat Prisoner 36, punching him numerous times on the face and head.

79. After the beating, Prisoner 36 was taken to a room from where deputies

FIRST AMENDED COMPLAINT – pg. 12

1  conducted a videotaped interview. During the interview the deputies asked Prisoner 36,
2  "What have you told Mary from the ACLU?" referring to the ACLU Jails Project
3  Coordinator. LASD has declined to hand over the videotaped interview.
4      80.  On October 28, 2009, each of the aforementioned incidents was reported to
5  BACA by letter from Mark Rosenbaum, Chief Counsel, ACLU-SC.
6      81.  Despite reporting these incidents to the LASD and BACA, no department-
7  wide changes in policy were implemented to attempt to eliminate further incidents of
8  constitutional violence after these incidents were reported. In fact, as recently as October
9  2011, BACA admitted in public hearings and to the press that he failed to implement
10 numerous recommendations for changes to MCJ made to him by independent counsel and
11 outside agencies for changes both in the MCJ physical plant and in LASD procedures, that
12 he failed to adequately monitor, supervise and/or discipline MCJ staff during his tenure as
13 Sheriff, all of which has resulted in a breakdown in safety to inmates, civilians and deputies
14 at MCJ.
15     82.  Despite repeated requests for years, LASD and BACA have refused to
16 disclose to the ACLU information about how LASD reviews use of force incidents—what
17 criteria it uses to assess the "reasonableness" of the force used, whether the reviewing body
18 is independent from the LASD and whether the documentation of use of force incidents is
19 adequate enough to facilitate meaningful review.
20     83.  This failure to disclose how LASD investigates these incidents has created a
21 lack of transparency regarding how a public facility, MCJ, is run.
22     84.  This lack of transparency and accountability has served to reinforce a
23 culture within the LASD that allows abuse of prisoners and their visitors to go relatively
24 unchecked since the custodial deputies know that it is statistically very unlikely they that
25 will either be investigated or disciplined for even the most egregious violations of inmates'
26 and visitors' constitutional rights.
27
28 ///

FIRST AMENDED COMPLAINT - pg. 13

## IV.

## FIRST COUNT

### VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCHS AND SEIZURES AND DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW

(42 U.S.C. § 1983 against Deputies PEREZ, ARONSON, WOMACK, IRVIN, SGT. GONZALEZ and DOES 1 through 10)

85. PLAINTIFF hereby re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of the complaint.

86. This Count is brought under 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

87. On or before the date of the above-identified incident, PLAINTIFF possessed the rights guaranteed by the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and excessive force by police officers and free from deprivation of liberty without due process of law.

88. At all times alleged herein, PLAINTIFF was not engaged in any assaultive behavior toward any Defendant, any LASD Deputy or any other person or persons while at the Men's Central Jail on July 31, 2010.

89. Defendants PEREZ, ARONSON, WOMACK and IRVIN, and DOES 1 through 10 without cause and/or provocation, hit, struck, beat and/or otherwise engaged in violent physical contact with PLAINTIFF causing severe injuries. The force used was excessive, unreasonable and in violation of Federal and State law.

90. Defendant GONZALEZ was the On Duty Supervisor of Defendants PEREZ, ARONSON, WOMACK and IRVIN on July 31, 2010. GONZALEZ had knowledge of the assault on PLAINTIFF, that it was done without cause and/or provocation and that the force used on PLAINTIFF was excessive and unreasonable. Despite this knowledge, following the assault, GONZALEZ failed to properly identify incident witnesses, failed to properly and completely document the assault and failed to report for discipline any of the involved Deputies, thereby condoning the actions of the involved Deputies.

91. The physical contact and abuse was entirely unjustified by any actions of PLAINTIFF and constituted an unreasonable and excessive use of force and was done with deliberate indifference to the health, safety and well-being of PLAINTIFF.

92. Said Defendants, and each of them, acted specifically with the intent to deprive PLAINTIFF of the following rights under the United States Constitution:

    a. Freedom from unreasonable seizures, in the form of excessive use of force by Police Officers/Sheriff's Deputies

    b. Freedom from summary punishment.

93. Said Defendants, and each of them, subjected PLAINTIFF to the aforementioned deprivations by either actual malice and/or deliberate indifference in disregard of PLAINTIFF'S civil rights.

94. Said Defendants acted at all times herein knowing full well that the established practices, longstanding customs, procedures and official policies of Defendants COUNTY and BACA and also the LASD would condone a cover-up of this misconduct and allow the continued use of illegal and excessive force in violation of the Fourth Amendment to the United States Constitution and the laws of the State of California.

95. As a direct and proximate result of the aforementioned acts of said Defendants, and each of them, PLAINTIFF received permanent and disabling injuries to PLAINTIFF'S body and mind, which caused PLAINTIFF to be unconstitutionally deprived of his personal liberties.

96. The aforementioned acts of Defendants, and each of them, were willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary and punitive damages.

## V.

## SECOND COUNT

## MUNICIPAL LIABILITY

### [Against Defendants COUNTY and DOES 1 through 10]

97. PLAINTIFF hereby re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of the complaint.